# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTHONY MINEO, an individual )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>GEICO, an insurance company )<br>)<br>Defendant. ) | Civil Action No. 12-1547<br>Judge Nora Barry Fischer |

## MEMORANDUM OPINION AND ORDER

Plaintiff Anthony Mineo ("Mineo") filed the instant case against Defendant GEICO ("GEICO") on October 16, 2012 in the Court of Common Pleas of Allegheny County, Pennsylvania, (Docket No. 1-3 at 1), and GEICO removed this case to the Western District of Pennsylvania, on October 25, 2012, (Docket No. 1). Presently pending before the Court is GEICO's Partial Motion for Summary Judgment on Mineo's claim that GEICO acted in bad faith. (Docket No. 24). Upon consideration of all the parties' filings, the parties' arguments presented at a Motion Hearing held on April 17, 2014, (Docket No. 34), the parties' supplemental record materials, (Docket Nos. 36-40, 42-49), the parties' supplemental briefs and findings of fact, (Docket Nos. 56-57, 60-61), and for the reasons more fully stated herein, Defendant's Motion, (Docket No. 24), is DENIED.

**I.   BACKGROUND**

The instant claim arises from Mineo's request for underinsured motorist ("UIM") benefits against his insurance carrier, GEICO, stemming from a motor vehicle accident that occurred on August 16, 2008 at approximately 12:30 PM, in which Mineo was rear-ended by Florence Walls.[1]

---

[1] The facts are viewed in the light most favorable to Plaintiff, as this case comes before the Court on Defendant's Motion for Summary Judgment. *See, e.g.*, *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) ("Under Federal Rule of Civil Procedure 56(c), summary judgment is proper where no genuine issue of material fact exists, and where, viewing the facts in the light most favorable to the party against whom summary judgment was entered, the moving party is

1

(Docket No. 1 at 1). Mineo is a 67-year-old Vietnam War veteran who served two tours of duty in Vietnam, with the first tour spanning thirteen months. (Docket No. 30-5 at 10-11). Six or seven months into his second tour, he was wounded during combat, receiving two gunshot wounds in the right shoulder and lower mandible. (Docket No. 30-5 at 7). One of the two bullets went through the bottom of his chin and came out of his mouth, requiring his entire chin to be totally reconstructed during several surgical operations around July 1966. (Docket No. 30-5 at 8-14). The other went through his right shoulder, which had to be fused, resulting in no muscle from the top of the shoulder down onto the bone. (Docket No. 30-5 at 14). As a result, the range of motion for his right shoulder became permanently limited; since 1967, Mineo has been unable to put his hand behind his back or neck. (Docket No. 30-5 at 15). Following his discharge from the hospital in February 1967, Mineo received a discharge of medical under honorable conditions, as well as a Purple Heart, Unit Citation, Vietnamese Unit Citation, and an Armed Forces Expeditionary Medal. (Docket No. 30-5 at 9).

After working at several different positions with various employers, Mineo began working for Highmark Inc. as a customer service agent at or around 2001, and went into claim adjustments. (Docket No. 30-5 at 22). Mineo was promoted to a unit in which he did all the inpatient and outpatient precertifications, wherein he would authorize individuals to go to the hospital and determine whether a precertification was necessary according to their plans with Highmark. (Docket No. 30-5 at 22). Mineo stayed with Highmark until July 2011, when he retired because he could not do the work anymore due to injuries he sustained to both his shoulders. (Docket No. 30-5 at 22-23).

Meanwhile, Mineo had been injured, as noted, due to a motor vehicle accident that occurred on August 16, 2008. (Docket No. 1). GEICO's log file for Mineo's claim discloses that Mineo lost

---

entitled to judgment as a matter of law.").

and regained consciousness prior to being taken to Mercy Hospital by emergency medical services. (Docket No. 30-3 at 39-40). Imaging tests for fracture and other trauma were negative, and Mineo was released, with instructions to return in the event of complications. (Docket No. 30-4 at 1-3).

After the accident, Mineo was referred to physical therapy at the Centers for Rehab Services. (Docket No. 30-4 at 18). His initial visit to physical therapy took place on August 27, 2008, but he forgot his prescription, so no physical therapy was performed. (Docket No. 30-4 at 19). He began physical therapy the next day. (Docket No. 30-4 at 19). The "Treatment Diary" shows that Mineo underwent twenty supine left shoulder retractions, and continued with this treatment and other exercises consistently through November 24, 2008. (Docket No. 30-4 at 20-27). During treatment, Mineo complained of shoulder locking on August 28, 2008, (Docket No. 30-4 at 19), and that his neck and shoulder were very sore on September 3, 2008, (Docket No. 30-4 at 28).

According to Mineo's physical therapy record from September 8, 2008, Mineo reported slipping on the grass and falling on his left side on September 5, 2008, and complained of increasing shoulder pain. (Docket No. 30-4 at 29). The record also notes that Mineo planned to see his doctor for the shoulder pain on September 12, 2008. (Docket No. 30-4 at 29). During his visit with Dr. Richard Urban, Mineo advised the doctor that his left shoulder was worse, due to the auto accident. (Docket No. 30-4 at 30). Three weeks after the September 8, 2008 record, Mineo's physical therapy assessment contained a notation that "Patient complains of left shoulder catching in elevated position–no pain at rest," with an onset date of August 16, 2008. (Docket No. 30-4 at 31).

Eventually, Mineo elected surgical intervention. He saw an orthopedic surgeon, Dr. Robert E. Schilken,[2] on October 13, 2008, with follow-up visits on November 3, 2008 and February 17, 2009. (Docket No. 30-4 at 32-34). At each of these visits, he reported pain and difficulty with

---

[2] Even though counsel for both parties attached numerous exhibits to their motion papers, including medical opinions of

3

everyday motion, but on physical exam he had full range of motion with pain at extreme flexion. (Docket No. 30-4 at 32-34). He underwent surgery for "[a]rthroscopic subacromial decompression" and "mini open rotator cuff repair" on April 9, 2009, performed by Dr. Schilken, whose post-operative diagnosis was "left rotator cuff tear." (Docket No. 30-1 at 27). After surgery, Mineo appeared to be doing quite well, yet he complained of trouble sleeping and shoulder pain at night during his July 21, 2009 follow-up visit. (Docket No. 30-4 at 35). Two years later, on November 30, 2011, he returned for a second follow-up appointment and reported worsening pain. (Docket No. 30-4 at 36). At both follow-ups, he received injections of steroids. (Docket No. 30-4 at 35-36).

Meanwhile, Mineo notified GEICO of his UIM claim on January 22, 2010. (Docket No. 30-3 at 38-41). GEICO granted Mineo consent to settle the underlying claim on March 8, 2010, and offered him $10,000 to settle his entire claim. (Docket No. 30-3 at 46-47). Mineo responded that this offer was not acceptable. (Docket No. 30-3 at 47). In turn, GEICO replied by informing Mineo that it took the position that his shoulder pain apparently started and increased only after he fell on his left side, as recorded in the September 8, 2008 physical therapy record. (Docket No. 30-3 at 47).

Although Jeff Klug ("Klug"), Mineo's physical therapist, declined to revise the September 8, 2008 entry, he wrote a letter to GEICO dated June 25, 2010 explaining that Mineo "had significant Left shoulder dysfunction at the time of initial evaluation on 8/27/08 before reporting fall on 9/8/08." (Docket No. 30-4 at 37). Notwithstanding the letter from Klug, GEICO wrote a formal letter to Mineo on July 15, 2010, extending its $10,000 offer. (Docket No. 30-3 at 48). Mineo responded by explaining that he had complained of left shoulder pain prior to the reported fall. (Docket No. 30-3 at 47). Charmeka Stewart ("Stewart"), GEICO's claims representative, advised Mineo that GEICO would not change its offer to Mineo because despite his complaints of left

---

Dr. Schilken and Dr. Liefeld, neither counsel provided an expert CV for these doctors. (Docket Nos. 26-1, 30).

4

shoulder pain prior to the reported fall, there was no evidence of treatment for this pain. (Docket No. 30-3 at 48). Stewart explained that GEICO's offer was based on injuries sustained in the motor vehicle accident, and GEICO did not dispute Mineo's claim of significant left shoulder dysfunction as of August 27, before the reported fall. (Docket No. 30-3 at 48). However, the physical therapy record apparently showed that Mineo fell on his shoulder, after which he had increased pain and went to see his doctor; despite his prior complaints of shoulder pain, he did not seek treatment for same until after the reported fall, at which point he had increased pain and began treatment. (Docket No. 30-3 at 48).

Two weeks later, Klug called GEICO to discuss the contested physical therapy record, and Stewart memorialized her discussion with Klug within the log file. (Docket No. 30-3 at 49). Stewart made the following notation: "Dr Stated He Is Not Going To Change His Records Because It Is What It Is. I Explained There Really Isnt Anything For Him To Do Although I Appreciated His Call and He Thanked Me for My Time" (Docket No. 30-3 at 49), even though Klug's prior letter established that Klug was not a doctor, but a physical therapist, (Docket No. 30-4 at 37). Seventeen days after her conversation with Klug, Stewart wrote a letter to Mineo confirming the conversation and reaffirming GEICO's position and offer for $10,000. (Docket No. 30-3 at 49).

In January 2011, Elaine Rensing ("Rensing"), Stewart's supervisor, entered a note in the log file that Mineo believed his claim was worth much more than GEICO did, and that Stewart should continue efforts to resolve the claim. (Docket No. 30-3 at 49). However, the parties were unable to come to an agreement, Mineo retained an attorney in April 2011, (Docket No. 30-3 at 50), and he filed the instant Complaint on October 16, 2012 in the Allegheny County Court of Common Pleas. (Docket No. 30-1 at 1). About one week later, on October 24, 2012, Danielle Pelletier entered the final notes in the GEICO log file, writing that the file would be referred out and that Mineo would

5

not remove or stay his claim of bad faith against GEICO. (Docket No. 30-3 at 57).

Dr. Schilken provided a medical opinion as a treating physician on February 11, 2013, that: (1) Mineo's injuries, including his left rotator cuff tear and subsequent repair, were related to the August 16, 2008 automobile accident; (2) Mineo's current complaints of pain, etc., are related and chronic in nature; and (3) Mineo was disabled from employment from the date of surgery, April 9, 2009 through June 15, 2009, when he was released to return to work, with limitations. (Docket No. 30-4 at 38). The Court notes that the log file contains no reference to Dr. Schilken's February 11, 2013 medical opinion, as the last entries are dated from October 24, 2012. (Docket No. 30-3 at 57).

Dr. Paul A. Liefeld[3] then conducted an Independent Medical Examination ("IME") on behalf of GEICO, four months after Dr. Schilken's diagnosis. (Docket No. 30-4 at 39-44). Dr. Liefeld opined that the "left shoulder was painful with return from abduction with external rotation and that that represents a positive impingement examination finding, indicating that [Mineo] was symptomatic for left shoulder impingement at that time." (Docket No. 30-4 at 43). He concluded that "[e]ven in the absence of a second injury occurrence, it is my opinion that [Mineo] sustained a motor vehicle injury to his left shoulder causing an impingement syndrome and possible rotator cuff tear, and that the occurrence of that injury necessitated the surgery performed by Dr. Schilken." (Docket No. 30-4 at 43). As with Dr. Schilken's diagnosis, the log file contains no notation of Dr. Liefeld's June 12, 2013 IME medical opinion on behalf of GEICO. (Docket No. 30-3 at 57).

## II. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Summary judgment is required if a party "fails to make a showing sufficient to

---
[3] As noted in Note 2, *supra*, neither counsel provided an expert CV for Dr. Liefeld. (Docket Nos. 26-1, 30).

establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. When a non-moving party has the burden of proof at trial, the moving party has no burden to negate the opponent's claim. *Id.* The moving party need not produce any evidence showing the absence of a genuine issue of material fact. *Id.* at 325. "Instead, ... the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* After the moving party has satisfied this low burden, the nonmoving party must provide facts showing that there is a genuine issue for trial to avoid summary judgment. *Id.* at 324. "Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Id.* "[C]ourts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion." *Scott v. Harris*, 550 U.S. 372, 378 (2007) (internal quotation marks and alterations omitted).

"[U]nder Pennsylvania law, bad faith on the part of an insurer must be proven by clear and convincing evidence." *Polselli v. Nationwide Mut. Fire Ins. Co.*, 23 F.3d 747, 750 (3d Cir. 1994) (quoting *Cowden v. Aetna Casualty and Surety Co.*, 134 A.2d 223, 229 (Pa. 1957)). "The fact that plaintiff's burden at trial is higher than preponderance of the evidence means that plaintiff's burden

7

in opposing summary judgment is higher as well." *Quaciari v. Allstate Ins. Co.*, 998 F. Supp. 578, 581 (E.D. Pa. 1998), *aff'd*, 172 F.3d 860 (3d Cir. 1998) (table); *see also Anderson*, 477 U.S. at 254 ("[I]n ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden."). "The 'clear and convincing' standard requires that the plaintiff show 'that the evidence is so clear, direct, weighty and convincing as to enable a clear conviction, without hesitation, about whether or not the defendants acted in bad faith.'" *J.C. Penney Life Ins. Co. v. Pilosi*, 393 F.3d 356, 367 (3d Cir. 2004) (quoting *Bostick v. ITT Hartford Group, Inc.*, 56 F. Supp. 2d 580, 587 (E.D. Pa. 1999)).

## III. DISCUSSION

"[A] plaintiff can only recover for bad faith of an insurer under 42 Pa. C.S. § 8371 if he or she shows, by clear and convincing evidence, that the insurer: (1) did not have a reasonable basis for denying benefits under the policy; and (2) knew or recklessly disregarded its lack of a reasonable basis in denying the claim." *J.C. Penney Life Ins. Co.*, 393 F.3d at 367. "Although the term 'bad faith' is not defined by the Pennsylvania bad faith statute, Pennsylvania courts have interpreted it as 'any frivolous or unfounded refusal to pay proceeds of a policy.'" *Id.* (quoting *Terletsky v. Prudential Prop. & Cas. Ins. Co.*, 649 A.2d 680, 688 (Pa. Super. Ct. 1994)).

"The case law makes clear that '[s]ection 8731 is not restricted to an insurer's bad faith in denying a claim,' but 'may also extend to the insurer's investigative practices.'" *Nw. Mut. Life Ins. Co. v. Stein*, Civ. No. 98-4820, 2005 WL 88997, *8 (E.D. Pa. Jan. 13, 2005) (quoting *O'Donnell v. Allstate Ins. Co.*, 734 A.2d 901, 906 (Pa. Super. 1999)). "Bad faith conduct also includes 'lack of good faith investigation into facts, and failure to communicate with the claimant." *Johnson v. Progressive Ins. Co.*, 987 A.2d 781, 784 (Pa. Super. Ct. 2009). An "insurance company ... is not required to show the process by which it reached its conclusion was flawless or that the investigatory

8

methods it employed eliminated possibilities at odds with its conclusion." *Nw. Mut. Life Ins. Co.*, 2005 WL 88997, at *8 ("Northwestern, as the moving party, has produced evidence that Mr. Stein refused to submit to an independent evaluation unless Northwestern complied with the conditions he set forth. Mr. Stein, by contrast, has not come forward with sufficient facts-particularly in light of the higher burden on a bad faith claim-to show that Northwestern lacked a reasonable basis for failing to conduct an independent medical examination or that Northwestern recklessly disregarded its lack of a reasonable basis.").

Nevertheless, the insurance company must conduct a meaningful investigation, which may include an in-person interview, examination under oath, medical authorizations, and/or independent medical examinations. *See Hollock v. Erie Ins. Exch.*,[4] 54 Pa. D. & C. 4th 449, 513 (Com. Pl. 2002), *aff'd*, 842 A.2d 409 (Pa. Super. Ct. 2004) ("Erie conducted no meaningful investigation of plaintiff's claims between March 8, 1996 and May 1, 1997, including failure to request a face to face interview, examination under oath, medical authorizations, or independent medical examinations. Erie's delay in investigating this claim is without reasonable or rational explanation and contrary to the provisions of 31 Pa. Code §146.6, which requires an insurer to complete investigation of a claim within 30 days after notification, unless the investigation cannot reasonably be completed within the time."); *Bonenberger v. Nationwide Mut. Ins. Co.*, 791 A.2d 378, 379-81 (Pa. Super. Ct. 2002) ("Following a non-jury trial the court concluded that Nationwide's representatives had no reasonable basis for their valuation of the claim and were not properly informed on the extent of Bonenberger's injuries. The court noted that Nationwide failed to conduct an independent medical exam and that its representatives were guided by the terms of its Pennsylvania Best Claims Practices Manual which

---

[4] According to 31 Pa. Code § 146.6, "[e]very insurer shall complete investigation of a claim within 30 days after notification of claim, unless the investigation cannot reasonably be completed within the time. If the investigation cannot be completed within 30 days, and every 45 days thereafter, the insurer shall provide the claimant with a reasonable written explanation for the delay and state when a decision on the claim may be expected."

contains the company's overall philosophy. … The court specifically did not accept as credible claims made by Nationwide's representatives that they considered multiple factors specific to Bonenberger's physical condition when evaluating his claim and determining what would be a fair settlement offer. Rather the court found that Nationwide claims handlers 'disregarded Plaintiff's medical records, conducted no independent medical examination, and made no reasonable evaluation based on Plaintiff's presentment.'"); *Haisley v. Sedgwick Claims Mgmt. Servs., Inc.*, Civ. No. 08-1463, 2011 WL 4565494, *5 (W.D. Pa. Sept. 29, 2011) ("Defendants not only 'failed to request an independent medical examination,' but also 'ignored Haisley's receipt of social security disability benefits after having required her to apply for them.'").

Here, Mineo must prove bad faith by clear and convincing evidence at trial, with a correspondingly high burden on summary judgment, and "[a] reasonable basis is all that is required to defeat a claim of bad faith." *J.C. Penney Life Ins. Co.*, 393 F.3d at 367. Nevertheless, at her deposition, GEICO's claims adjuster, Stewart, could not recall anything with respect to Mineo's file other than what was in the log file. (Docket No. 26-4 at 11-12, 20-22). She testified that whatever she did was in the log file, and if the log file contains a notation, that is what she did. (Docket Nos. 26-3 at 38-39, 26-4 at 50, 26-5 at 1-6). Stewart relied on only one physical therapy record to justify her position that Mineo's injury was caused or aggravated by the alleged fall on his left side during physical therapy[5]—this record is the basis for her offer to Mineo of $10,000 (a total of $60,000 given the $50,000 paid on the underlying claim). (Docket No. 26-4 at 11-12, 21-22). She reached her conclusion based on her "review" of the medical records, which she believed were very specific. (Docket No. 26-4 at 23). She did not believe an IME was necessary, even though she is not a doctor, she knew that Mineo disputed the record, and the physical therapist sent a follow-up letter

---

[5] In addition, to the extent that Stewart describes Klug's position as "Dr Stated He Is Not Going To Change His

explaining that Mineo had significant left shoulder dysfunction prior to the reported fall. (Docket No. 26-4 at 18-19, 23, 31-32). Her testimony is confirmed by the log file, which makes no reference to Dr. Schilken, the doctor who had performed Mineo's shoulder surgery. (Docket No. 26-5 at 6).

GEICO's claims manual, moreover, admonishes its adjusters to avoid drawing conclusions based on assumption or speculation, and underscores the importance of completeness:

> Avoid drawing conclusions based on assumption or speculation. An erroneous conclusion can make the difference between settlement and denial. If the denial is unsound, the result may be a complaint or a lawsuit, either of which could have been avoided. Because some cases turn on very fine points, reports must be complete and accurate.

*See, e.g.*, GEICO Claims Manual (January 1, 2012 to August 16, 2012), (Docket No. 49-6 at 2). There is also a Sequence of Investigation, which "applies to the majority of cases," and sets forth that adjusters should: "Determine whether independent medical examinations are necessary, and if so, see your supervisor and then arrange for them. Determine whether medical peer review should be secured. If so, see your supervisor." (Docket No. 49-6 at 3-6). Stewart, however, did not obtain an IME or seek medical peer review. (Docket No. 26-4 at 18-19, 23, 31-32). GEICO ultimately did obtain an IME from Dr. Liefeld, but only in June 2013, after this lawsuit was filed in October 2012, and more than four years after Mineo's surgery in April 2009, three years after the causation dispute first arose in March 2010, and two years after Mineo informed GEICO that he had retained an attorney in April 2011. (Docket Nos. 30-3 at 50, 30-4 at 39-44).

GEICO urges the Court to place weight on Stewart's deposition testimony that she reviewed all of Dr. Schilken's records in reviewing the file, but GEICO does not account for Stewart's numerous other admissions throughout her deposition that everything she did was contained in the

---

Records," Stewart is incorrect, as Klug is not a doctor, but a physical therapist. (Docket No. 30-3 at 49).

11

log file, and that she did not recall whether she reviewed records other than what was contained in same. (Docket No. 60 at 4). Again, there is no reference to Dr. Schilken's treatment or diagnosis contained within the log file. Given same, the Court declines to make credibility determinations in favor of GEICO while ruling on its motion for summary judgment. *See Scott*, 550 U.S. at 378.

GEICO further argues that there is no evidence that GEICO ever placed Mineo's claim on 90-Day Control, (Docket No. 60 at 7), but GEICO appears to be mistaken, as Stewart herself testified that the log file states: "90-day file/reserve review completed and submitted to Elaine Rensing for approval." (Docket No. 26-4 at 2). Consistent with same, Rensing testified that when a file reaches 90 days old from the time it was initially reported, she reviews the case to calculate a statistical reserve and set reserves, and reviews the file again at six, twelve, and eighteen months. (Docket No. 26-7 at 22-23). Rensing's testimony is consistent with the GEICO claims manual, which sets forth:

> Claims handlers must create a 90 Day Control List Summary in ALOG for every claim on the 90 Day Control List. Supervisors and managers review each summary and give direction, comments and instructions in ALOG. Each Summary and supervisor/manager review must be completed by the end of the month in which the 90th day falls.

*See, e.g.*, GEICO Claims Manual, (Docket No. 49-4 at 9). In light of the above, the Court questions whether GEICO created and/or produced to Mineo the referenced 90-Day Control List Summary. (Docket No. 60 at 7).

GEICO asserts that it should not be expected to bid against itself or be faulted for the fact that negotiations stalled with Mineo, but GEICO still had several other options, including conducting an in-person interview of Mineo, examination of Mineo under oath, medical authorizations, and/or independent medical examinations. *See Hollock*, 54 Pa. D. & C. 4th at 513. Based on the current record, it appears that GEICO did not attempt any of the foregoing. As

12

previously noted, the log file makes no reference to Dr. Schilken, (Docket No. 26-5 at 6), even though GEICO's Personal Injury Protection file contains all of Mineo's treatment records, his surgical records before and after surgery, his Explanation of Benefit statements, and his physical therapy and billing statements. (Docket No. 36 at 44-156).

When GEICO finally obtained an IME almost two years later in June 2013, its doctor, Paul A. Liefeld, concluded: "Even in the absence of a second injury occurrence, it is my opinion that [Mineo] sustained a motor vehicle injury to his left shoulder causing an impingement syndrome and possible rotator cuff tear, and that the occurrence of that injury necessitated the surgery performed by Dr. Schilken." (Docket No. 30-4 at 43). Finally, at least two Pennsylvania cases have suggested that the failure to obtain an independent medical examination could be probative towards a showing of bad faith.[6] *See Hollock*, 54 Pa. D. & C.4th at 513; *Bonenberger*, 791 A.2d at 379-80.

For these reasons, the Court denies GEICO's Motion for Partial Summary Judgment, as GEICO has not established that no reasonable jury could find in favor of Mineo on bad faith.

## IV.     CONCLUSION

Based on the foregoing,

IT IS HEREBY ORDERED that Defendant's Motion for Partial Summary Judgment [24] is DENIED.

IT IS FURTHER ORDERED that,

1. Plaintiff shall file his Pretrial Statement by no later than **July 28, 2014 at 12:00 PM**.

---

[6] The Court is also mindful of the Unfair Insurance Practices Act, 40 P.S. § 1171 (2014). The Court questions the applicability of several paragraphs of Title 40, § 1171.5, ¶ 10, including, but not limited to: "Failing to acknowledge and act promptly upon written or oral communications with respect to claims arising under insurance policies," 40 P.A. § 1171.5(10)(ii); "Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which the company's liability under the policy has become reasonably clear," *id.* § 1171.5(10)(vi); and "Compelling persons to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts due and ultimately recovered in actions brought by such persons," *id.* § 1171.5(10)(vii). Here, the record is clear that Mineo was rear-ended by another motor vehicle due to no fault of his own, he had UIM coverage with GEICO, GEICO granted Mineo consent to settle the underlying claim, Mineo was hurt during the motor vehicle accident, he underwent ongoing physical therapy, and he had shoulder surgery. (Docket Nos. 30-3 at 39-40, 46-47, 30-4 at 18, 1-3, 18-36).

2. Defendant shall file its Pretrial Statement by no later than **August 11, 2014 at 12:00 PM**.

3. A Status Conference shall be held on **August 12, 2014 at 9:30 AM** to set a trial date and establish deadlines for the Court's Pretrial Order, which shall be issued following said conference.

>*s/ Nora Barry Fischer*
>Nora Barry Fischer
>United States District Judge

Date: July 15, 2014
cc/ecf: All counsel of record